W. N. STEVENSON & COMPANY, INC., Appellant, v. HERMAN HARTMAN, Respondent.

First Department, April 9, 1920.

Carriers — action to recover goods stolen from licensed cartman in city of New York — evidence — burden of establishing negligence of cartman — when licensed cartman not common carrier and insurer of goods.

Where in an action to recover the value of goods which the plaintiff intrusted for transportation to the defendant, who was licensed to do a trucking business in the city of New York, it appeared that after the goods were placed on the defendant's truck he was called to the plaintiff's office and on his return discovered that his team and the load thereon had been stolen during his absence, it was proper, assuming that the truckman was merely a bailee for hire, for the court to charge in substance that while the plaintiff made a *prima facie* case of negligence on the part of the defendant by proving a demand and failure to deliver the goods the subsequent proof by the defendant that the goods had been stolen rebutted the plaintiff's *prima facie* case and placed him under the burden of giving further evidence of negligence.

Although the defendant was licensed as a public cartman in the city of New York under the Greater New York charter and the municipal ordinances, he was not a common carrier so as to become an insurer of the goods where he did not hold himself out as such carrier and was under no obligation to accept any goods tendered to him for transportation, but on the contrary worked only for persons of his own choosing.

The general rule by which it is to be decided whether the carrier of goods is a common or public carrier depends upon whether he becomes such under statute or ordinance or holds himself out, either expressly or by course of conduct, as ready to carry for hire the goods of all persons indifferently. Not all persons licensed as public cartmen by the city of New York become common carriers.

MOTION by the plaintiff, W. N. Stevenson & Company, Inc., for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the direction of a general verdict in defendant's favor, after the court had taken a special verdict on two issues, upon a trial before the court and a jury in the City Court of the City of New York in December, 1919.

*A. P. Bachman* of counsel [*James E. Bennet*, attorney], for the plaintiff.

*Charles Frankel*, for the defendant.

LAUGHLIN, J.:

The trial court took a special verdict on two issues and then directed a general verdict for the defendant. The plaintiff was engaged in manufacturing and selling umbrellas; and the defendant was engaged in trucking, with a horse and truck which he rented for three dollars and fifty cents a day, and of which he had personal charge as driver. The plaintiff employed the defendant on the 2d of July, 1919, to deliver eight packages of umbrellas to various railroad freight stations in the borough of Manhattan for transportation to its customers. The goods were loaded onto the truck by the defendant and plaintiff's chief shipping clerk at the plaintiff's place of business in the borough of Manhattan and were secured in place on the truck by a rope. The loading was completed and defendant was about ready to start to deliver the goods at noon when he was informed by one of plaintiff's employees that the head clerk of the plaintiff, whose office was upstairs, wished to see him. He thereupon requested the driver of a railway express wagon, which was standing near the truck, " to keep his eye " on the truck until he returned from upstairs, stating that it would only take him five minutes. He then went upstairs as requested and when he returned in about ten

First Department, April, 1920.                    [Vol. 191.

minutes, the horse and truck were not where he had left them, and on inquiry he ascertained the direction in which they had gone and followed but was unable to find them. He then telephoned to the police station and called there and gave the necessary information. He also telephoned the plaintiff that the goods had been stolen. He searched that day until late at night but was unable to find the horse, truck or goods. He repeatedly telephoned the police authorities with respect to whether the stolen property had been found and at midnight was informed by them that the horse and wagon had been found under the Williamsburg bridge but neither he nor the police could find any trace of the goods. The jury by their special verdict found that the goods were stolen from the possession of the defendant and that he was not guilty of negligence or want of ordinary care in the discharge of his duty with respect to the care and delivery thereof.

One ground upon which a reversal is asked relates to the charge on which the special verdict was rendered. The court instructed the jury that the burden of proof was on the defendant to show by a fair preponderance of evidence that the goods were stolen and that the burden was on the plaintiff to satisfy them by a fair preponderance of evidence that defendant failed to use the degree of care to prevent their being stolen which an ordinarily prudent truckman would have exercised. Counsel for the plaintiff excepted to the charge that the burden was on his client to show that the defendant was negligent in this respect, and thereupon the court further instructed the jury that where it appears that the merchandise has been lost by robbery, the burden is on the plaintiff seeking to recover for the goods to show affirmatively that the robbery was occasioned or was not prevented by some negligence or omission of due care on the part of the truckman. Assuming that the truckman was merely a bailee for hire, which is the theory on which the general verdict was directed, I think there was no error in the charge, for the rule then applicable is that the liability depends on negligence, and while the plaintiff makes out a *prima facie* case by proof of demand and failure to deliver, the defendant by proof that the goods were lost by fire or theft rebuts the plaintiff's *prima facie* case and the plaintiff must resume the burden of presenting further

evidence of negligence. (*Claflin* v. *Meyer*, 75 N. Y. 260; *Allen* v. *Fulton Motor Car Co.*, 71 Misc. Rep. 190; *Grant* v. *Miller*, 159 N. Y. Supp. 829; *Pike* v. *Nash*, 1 Keyes, 335.)

The plaintiff further contends that the defendant was a common carrier and became an insurer of the goods and is, therefore, liable and on that theory that a verdict should have been directed for the plaintiff. The plaintiff alleged that defendant was a public truckman and proved that the defendant obtained a license as *a public cartman.* The ordinance it quotes is section 310, which evidently is from some former codification of the ordinances.* The courts in the city of New York now, however, take judicial notice of city ordinances (Greater New York Charter [Laws of 1901, chap. 466], § 1556, as amd. by Laws of 1917, chap. 382), and the ordinances relating to public carts and cartmen are contained in article 11 of chapter 14 of the Code of Ordinances of the City of New York as adopted in 1916. (Cosby's Code of Ordinances, 1919, p. 364.) Section 140 thereof provides as follows: " Every vehicle, of whatever construction, drawn by animals or propelled by any motor power, which is kept for hire or used to carry merchandise, household or office furniture or other bulky articles within the city, for pay, shall be deemed to be a public cart, and the owner thereof shall be deemed to be a public cartman," and a license therefor must be obtained by the owner. (See Code of Ordinances of City of New York, 1916, chap. 14, art. 11, §§ 142, 143.) Defendant testified that prior to the 1st of February, 1919, he had been in the employ of the plaintiff for a period of ten months as shipping clerk and had followed that occupation with another employer for fifteen years before; that on said first day of February he hired the horse and truck and obtained a license as a public truckman; that his stand was at Fifteenth street and Sixth avenue and his customers were in that vicinity and were engaged in different lines of business; that he made deliveries from the Battery to Fifty-ninth street, having no special route and took all the goods he could carry, and; when he obtained a load, proceeded to deliver, and that he was not required to and did

---

* See Code of Ordinances of City of New York, 1906, pt. 1, chap. 7, § 310, as amd.; Cosby's Code of Ordinances, 1914, pp. 70, 71.— [REP.

not work for any one in particular and made his own choice of customers and had no uniform rate of charges.

No statute having any bearing on the point has been drawn to our attention and no ordinance other than the one the substance of which has been stated is relied on by the plaintiff, but there is a statute and there are other ordinances which we think have some bearing on the case. Section 51 of the Greater New York charter (as amd. by Laws of 1916, chap. 192) authorizes the board of aldermen to provide for licensing and otherwise regulating the business, among others, of "public cartmen, truckmen," etc. Section 144 of article 11 of chapter 14 of the Code of Ordinances purports to regulate the compensation of public cartmen and provides that the amount to be charged by them may be agreed upon in advance and in such case the contract or agreement shall control and regulate the employment, and it requires the public cartman to furnish the person with whom he contracts a written memorandum, to be signed by both parties, or by their authorized representatives, setting forth clearly the terms of the contract on blanks to be approved by the license department, and it fixes the rate to be charged where a special agreement is not made in advance. We find no provision with respect to stands in the public streets or places for public cartmen, and, therefore, we can attach no importance to the testimony of the defendant with respect to where he stands before proceeding to procure a load of goods for delivery. It does not appear that he publicly solicits employment or makes his contracts in public places. His use of the street as a stand, therefore, is at sufferance without imposing upon him any obligation to accept any goods tendered to him. It is to be inferred that he acts for business acquaintances only. That it is competent for the Legislature to authorize the municipal authorities to require that licenses shall be obtained for all vehicles engaged in carting for hire whether under special contracts or where the employment is publicly solicited has long since been adjudicated. (*City of Brooklyn* v. *Breslin*, 57 N. Y. 591; *Ferdon* v. *Cunningham*, 20 How. Pr. 154.). But while those licensed are declared public cartmen it is quite clear that they do not all become common carriers. They may, or may not, depending upon whether or not they

hold themselves out as such. The learned counsel for the defendant relies on certain authorities which recognize a distinction between public and private carriers and hold that those compelled by law to carry indiscriminately or so hold themselves out are public or common carriers (*Allen* v. *Sackrider,* 37 N. Y. 341; *Jackson A. Iron Works* v. *Hurlbut,* 158 id. 37; 10 C. J. 49; *Electric Supply Stores* v. *Gaywood,* 100 L. T. Rep. [N. S.] 855), and those who select their own customers and carry for hire or reward, who are private carriers. (*Allen* v. *Sackrider, supra; Jackson A. Iron Works* v. *Hurlbut, supra; Fish* v. *Clark,* 49 N. Y. 122; *O'Rourke* v. *Bates,* 73 Misc. Rep. 414.) The general rule by which it is to be decided whether the carrier of goods is a common or public carrier depends upon whether he becomes such under statute or ordinance or holds himself out, either expressly or by course of conduct, as ready to carry for hire the goods of all persons indifferently (*Jackson A. Iron Works* v. *Hurlbut, supra; Heyman* v. *Stryker,* 116 N. Y. Supp. 638; *Fein* v. *Weir,* 129 App. Div. 307; affd., 199 N. Y. 540; *Robinson* v. *Cornish,* 13 N. Y. Supp. 577), but it has been recently stated by this court and by the Court of Appeals, without any discussion of the point, however, that a truckman transporting goods for hire under a special contract is a common carrier and liable as such. (*Heuman* v. *Powers Co.,* 175 App. Div. 627; revd. on another point, 226 N. Y. 205.) The record in that case shows that it was conceded that the defendant was a common carrier and the point litigated was whether it could lawfully limit its liability as it had attempted to do. That decision, therefore, is not decisive or controlling in the case at bar.

I am of opinion, therefore, that the defendant was not a common carrier, that the exceptions should be overruled, with costs, and judgment directed on the general verdict in favor of the defendant, with costs.

Clarke, P. J., Dowling and Merrell, JJ., concur.

Exceptions overruled, with costs, and judgment directed on the general verdict in favor of defendant, with costs. Settle order on notice.